<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                  United States Court of Appeals
                       For the First Circuit
                       ____________________
                                  
                                  
No. 97-1851

                         NICKEN FERGISTE,
                                  
                            Petitioner,
                                  
                                v.
                                  
              IMMIGRATION AND NATURALIZATION SERVICE,
                                  
                            Respondent.
                                  
                       ____________________
                                  
                ON PETITION FOR REVIEW OF AN ORDER
                OF THE BOARD OF IMMIGRATION APPEALS
                                  
                       ____________________
                                  
                              Before
                                  
                      Selya, Stahl and Lynch,
                          Circuit Judges.
                                  
                       ____________________
                                  
   David S. Clancy with whom Deborah E. Anker was on brief for
petitioner.
   Karen Ann Hunold, Attorney, with whom Frank W. Hunger, Assistant
Attorney General, and Linda S. Wendtland, Senior Litigation Counsel,
Office of Immigration Litigation, United States Department of Justice,
were on brief for respondent.

                        ____________________

                          March 12, 1998
                        ____________________

     STAHL, Circuit Judge.  Petitioner Nicken Fergiste appeals a
   Board of Immigration Appeals ("Board" or "BIA") decision
   affirming a final order of exclusion, denying him political
   asylum and withholding of deportation.  The Board found that
   changed country conditions in Haiti had obviated any need for
   political asylum.  Because the Board failed to apply, and the
   Immigration and Naturalization Service ("INS") failed to
   rebut, a presumption that petitioner had a reasonable fear of
   persecution in the future if he were to return to Haiti, we
   reverse and remand the case to the Board.   
                             I.   
                 FACTS AND PRIOR PROCEEDINGS
     Fergiste seeks political asylum under section 208(a) of the
 Immigration and Nationality Act ("INA"), 8 U.S.C.  1158(a),
 and withholding of deportation under section 243(h) of the
 INA, 8 U.S.C.  1253(h), on the basis that he has suffered
 political persecution in his home country of Haiti and that
    such persecution will resume if he returns to Haiti.
     Fergiste's testimony, affidavit, and asylum application
 showed the following facts.  Fergiste was born in Port-au-
 Prince, Haiti, on April 17, 1966.  He worked as a fork lift
 driver for the port authority, a supervisor on a merchant
 ship managed by his cousin, and an accountant.  From 1979
 until the early 1980s, Fergiste attended and participated in
 activities at the St. Jean Bosco Church, where Jean-Bertrand
 Aristide preached reform.  He also attended meetings of the
 National Front for Change and Democracy ("FNCD"), Aristide's
 political party, and helped to campaign and raise money for
   Aristide's bid to be president of Haiti.  In addition,
   Fergiste worked with a "neighborhood committee" that,
 apparently, was both devoted to community improvement and
   involved with politics, and "Family is Your Life," an
 organization dedicated to helping orphans.  In 1990, on the
   day Aristide was elected president, the FNCD assigned
 Fergiste to monitor for fairness a Port-au-Prince polling
                           booth.
     Fergiste believes that, as a result of his open support of
 Aristide and his friendship with another Aristide supporter,
 Pierre Charles, he became a target of political persecution
 by the Ton-Ton Macoutes, a paramilitary group that protected
 the Duvalier dictatorship until 1986 when the Duvaliers were
 deposed.  He also believes that he was targeted by military
 "attachs" that protected a series of military dictators from
 1986 until Aristide's election in 1990.  Fergiste recounts
    several incidents to support his claim of political
 persecution.  On July 29, 1985, he was shot in the shoulder
 by a member of the Ton-Ton Macoutes, allegedly because of his
 association with Pierre Charles.  In May 1989, government
  attachs raided Fergiste's home and, when unable to find
 Fergiste, murdered his aunt.  Following a 1991 coup d'etat
   during which the military regained power, a political
 associate of Fergiste was repeatedly threatened and detained
 and eventually went into hiding, and Pierre Charles was shot
 and killed.  In September 1993, three government attachs
 approached Fergiste and told him to cease associating with a
 fellow Aristide supporter and to become an attach.  One of
 them hit him on the back of his shoulder with either his fist
 or the butt of a rifle.  And in December 1993, three attachs
 went to Fergiste's mother's house, threatened her by putting
   a gun to her head, and eventually fired several times,
                hitting her in the shoulder.
     In early 1994, fearing for his safety, Fergiste fled his
 homeland and came to the United States unlawfully.  Although
  democratic government was restored to Haiti in September
 1994,   Fergiste remains afraid to return on the grounds that
   Haiti is still unstable, and that anti-Aristide factions
   continue to persecute Aristide supporters.
       After arriving in the United States and being placed in
   exclusion proceedings, Fergiste requested political asylum
   under section 208(a) of the INA, 8 U.S.C.  1158(a), and
   withholding of deportation under section 243(h) of the INA, 8
   U.S.C.  1253(h).  On August 23, 1995, an Immigration Judge
   ("IJ") rejected both of these requests.  On June 30, 1997, a
   three-member panel of the BIA rejected Fergiste's appeal in a
 highly-fractured decision.    It issued a final order of
   exclusion against him.  This appeal followed.
                             II.
                          DISCUSSION
                    A.  Standard of Review
     "The Board's determination of statutory eligibility for
   relief from deportation is conclusive if 'supported by
 reasonable, substantial, and probative evidence on the record
 considered as a whole.'"  Gebremichael v. INS, 10 F.3d 28, 34
 (1st Cir. 1993) (quoting INS v. Elias-Zacarias, 502 U.S. 478,
 482 (1992)); 8 U.S.C.  1105a(a)(4).  Reversal of the Board's
  determination thus depends on whether the petitioner has
 shown "that the evidence he presented was so compelling that
  no reasonable factfinder could fail to find [that he was
 eligible]."  Elias-Zacarias, 502 U.S. at 484.  As always, we
              review questions of law de novo.
                         B.  Analysis
     Petitioner makes five arguments that the Board's decision
 should be remanded or reversed; all but the fourth argument
 are based on his right to procedural due process.  First,
  Fergiste argues that the Board impermissibly applied the
 doctrine of "changed country conditions" by rote, without
 adequately considering the effect of changed conditions on
  his particular case.  Second, he contends that the Board
  failed to consider evidence that anti-Aristide factions
 continued to persecute Aristide supporters after his 1994
 return to power and that such persecutions continue to this
      day.  Third, Fergiste argues that, in making its
  determination, the Board relied on evidence of political
  changes in Haiti which took place after the parties had
 submitted briefs to the Board and to which Fergiste was not
 given an opportunity to respond.  Fourth, he asserts that the
  Board member who authored the concurring opinion in his
 appeal, and without whom there would have been no majority
     decision for denial of asylum, failed to apply the
  presumption of future persecution required by that Board
  member's finding of past persecution.  Finally, Fergiste
 contends that, although the Board member who authored the
   controlling opinion found that Fergiste had failed to
     establish past persecution, he did not provide any
               explanation for that finding.
     We begin with petitioner's fourth argument: that the Board
 member who authored the concurring opinion committed a legal
 error which undermines the Board's decision.  Our focus on
   this argument necessarily leads us to address, without
 deciding, petitioner's first, second, and fifth arguments.  
       A finding of past persecution triggers a regulatory
 presumption that the applicant has a well-founded fear of
     future persecution, provisionally establishing the
 applicant's refugee status and eligibility for asylum.  See 8
 C.F.R.  208.13(b)(1)(i)(1997).  Where the Board finds that
 past persecution has been established, the INS has the burden
 of proving, by a preponderance of the evidence, that "since
    the time the persecution occurred conditions in the
 applicant's country of nationality . . . have changed to such
 an extent that the applicant no longer has a well-founded
 fear of being persecuted if . . . he were to return."  Id.
      The INS argues that Fergiste failed to establish past
 persecution and that, even if he had, the Board implicitly
 recognized and rebutted the presumption of future persecution
 by relying on the discussion of changed country conditions in
 In Re E-P-, No. 3311 (BIA Mar. 14, 1997).  In essence, the
 INS's latter argument is that the official notice of changed
  country conditions taken by the Board in an earlier case
 counters the specific evidence of persecution that Fergiste
   has presented and overcomes the presumption of future
    persecution.  We do not agree with either argument.
       First, as a legal matter, Fergiste established past
  persecution.  The Board panel that considered Fergiste's
  appeal consisted of three persons, each of whom wrote a
 separate opinion, and none of whom joined an opinion by one
 of the other two members.  Although the concurring opinion
  was so designated because it reached the same outcome --
 denial of asylum and withholding of deportation -- as the so-
 called majority opinion, it followed the dissenting opinion
      with regard to its finding of past persecution.  
 Notwithstanding the result of the appeal, the fact remains
 that two Board members -- a majority -- found that Fergiste
 had established past persecution.  Thus, as a matter of law,
  although the author of the "majority" opinion deemed the
 evidence Fergiste presented to be insufficient to establish
   past persecution, a presumption of future persecution
 nonetheless arose from the findings of the remaining Board
 members.   
       One of the two Board members who found past persecution did
   not apply a presumption of future persecution, however.  
   Although the dissenting Board member would have applied the
   presumption, the concurring member did not, stating only
   that, although he found that Fergiste had established past
   persecution, he "read[] Matter of E-P- . . . to require
   denial of the respondent's asylum application on the basis of
   changed country conditions."  Because a majority of the Board
   reasonably found that Fergiste had established past
   persecution, there arose a rebuttable presumption of future
   persecution, and the Board's failure to apply it constitutes
   legal error.
       Second, even if we accept the INS's argument that the Board
   implicitly applied a presumption of future persecution, the
   Board's administrative notice of changed country conditions
   did not suffice to show that Fergiste himself no longer had a
 reasonable fear of future persecution.    Abstract "changed
   country conditions," do not automatically trump the specific
   evidence presented by the applicant.  Rather, changes in
   country conditions must be shown to have negated the
   particular applicant's well-founded fear of persecution.  See8 C.F.R.  208.13(b)(1)(i); Vallecillo-Castillo v. INS, 121
   F.3d 1237, 1240 (9th Cir. 1996); Osorio v. INS, 99 F.3d 928,
   932-33 (9th Cir. 1996).
       The only evidence in the record in support of the INS's
   position were a 1994 advisory opinion letter from the State
   Department, and a 1994 State Department Profile of Asylum
   Claims and Country Conditions that discussed Haiti's
   political and social conditions in generalized terms.  For
   his part, Fergiste presented a great deal of evidence
   relating to his own specific circumstances.  Such evidence
   included a 1995 letter from the Deputy Representative of the
   United Nations High Commissioner for Refugees stating that at
   least seventy Aristide supporters had been murdered in the
   two months following the United States intervention in Haiti;
   a 1995 Reuters newswire story stating that a member of the
   FNCD had been shot to death; and a 1995 report of the New
   England Observers' Delegation to Haiti stating that political
   assassinations and intimidation of Aristide supporters
   persist.      Indeed, Fergiste presented hundreds of pages of
   documentary evidence that either contradicted the Board's
   conclusions or placed them into question.  Yet the Board
   mentioned none of them in its analysis, nor did it discuss
   how or whether Fergiste's particular situation may be
   affected by the changed country conditions that it
   recognized.  That the Board ignored Fergiste's individual
   situation is further supported by the fact that the Board's
   majority opinion takes the heart of its analysis virtually
   verbatim from the language of an earlier opinion, In Re E-P-,
   No. 3311 (BIA Mar. 17, 1997), in which the Board denied the
   petitioner's application for asylum on a finding of no past
   persecution and changed country conditions.  Thus, even
   assuming that the Board implicitly applied a presumption of
   future persecution, the Board's reliance on general changed
   country conditions did not support its conclusion that
   Fergiste's fear of personal persecution is no longer well-
   founded.
       Therefore, without determining whether the Board's rote
   recitation of the earlier opinion and its failure to consider
   Fergiste's individual situation in the context of the changed
   country conditions violated Fergiste's procedural due process
   rights, we conclude as a matter of law that, because the INS
   did not rebut the presumption of future persecution once a
   majority of the Board had found past persecution, Fergiste is
   statutorily eligible for asylum.  See Vallecillo-Castillo,
   121 F.3d at 1240; Prasad v. INS, 101 F.3d 614, 617 (9th Cir.
   1996) (determining that the INS had not rebutted the
   presumption of future persecution, even though the Board had
   not reached that issue).  It remains to be determined,
   however, whether Fergiste is entitled to asylum as a matter
   of the discretion of the Attorney General.  See Ravindran v.
   INS, 976 F.2d 754, 758 (1st Cir. 1992); see also 8 U.S.C.  
   1158(b)(1) (granting discretion to the Attorney General).  We
   thus remand to the IJ to determine, in the exercise of
   discretion on behalf of the Attorney General, whether to
 grant Fergiste's application for asylum.    
       We next address Fergiste's withholding of deportation claim.  
   Section 243(h)(1) of the INA, 8 U.S.C.  1253(h)(1), provides
   that "[t]he Attorney General shall not deport or return any
   alien . . . if . . . such alien's life or freedom would be
   threatened."  An applicant's deportation must be withheld if
   he or she establishes that "it is more likely than not that
   he or she would be persecuted on account of race, religion,
   nationality, membership in a particular social group, or
   political opinion."  8 C.F.R.  208.16(b)(1); see INS  v.
   Stevic, 467 U.S. 407, 429-30 (1984).  To be entitled to
   withholding of deportation, then, an applicant must
   demonstrate "a clear probability of persecution," see Stevic,
   467 U.S. at 413, a stricter standard than the "well-founded
   fear of persecution" required to obtain asylum eligibility.
       However, some forms of past persecution trigger a regulatory
   presumption that the applicant is entitled to withholding of
   deportation.  In particular, if the applicant is determined
   to have "suffered persecution in the past such that his life
   or freedom was threatened," the INS assumes the burden of
   proving, by a preponderance of the evidence, that conditions
   in that country have changed to the extent that "it is no
   longer more likely than not that the applicant would be so
   persecuted there."  Id.  208.16(b)(2); Singh v. INS, 94 F.3d
   1353, 1361 (9th Cir. 1996).  Thus, although a finding of
   general "past persecution" is sufficient to shift the burden
   of proof under 8 C.F.R.  208.13(b)(1)(i) (the regulatory
   standard for asylum eligibility), the Board must find that
   the applicant's life or freedom has been threatened to shift
   the burden of proof under 8 C.F.R.  208.16(b)(2) (the
   regulatory standard for withholding of deportation).
       Here, the Board's finding that Fergiste suffered past
   persecution indicates that Fergiste is entitled to
   withholding of deportation.  To be sure, the concurring Board
   member did not mention specifically anything about the nature
   of the harm that he found Fergiste to have suffered.  
   Nonetheless, "[a] key factor in finding evidence sufficient
   for withholding of deportation is whether harm or threats of
   harm were aimed against petitioner specifically," Gonzales-
   Neyra v. INS, 122 F.3d 1293, 1297 (9th Cir. 1997) (internal
   citation omitted).  We thus determine that the concurring
   opinion's finding of past persecution, supplemented by the
   evidence in the record of particularized harm, demonstrate
   that Fergiste's life or freedom, or both, had been
   threatened.  This conclusion is supported by the fact that
   the distinction between the asylum eligibility and
   withholding of deportation standards regarding past harm has
   played no role in cases that have considered both provisions.  
   See, e.g., Vallecillo-Castillo, 121 F.3d at 1240 ("Because we
   find that petitioner has suffered past persecution, we also
   find that petitioner is entitled to a presumption 'that his
   life or freedom would be threatened' if deported . . . .");
   Singh v. Ilchert, 69 F.3d 375, 381 (9th Cir. 1995); Singh v.
   Ilchert, 63 F.3d 1501, 1510 (9th Cir. 1995).
       The INS thus had the burden of showing that it is no longer
   more likely than not that the persecution would resume if
   Fergiste were to return to Haiti.  See 8 C.F.R.  
   208.16(b)(2).  As discussed above, the general evidence that
   the INS presented does not rebut this presumption.  We
   therefore hold that petitioner was entitled to withholding of
   deportation.
       Finally, in response to our brother's disagreement with our
   decision to reverse, rather than to remand, the asylum and
   withholding of deportation issues, we note that, although
   courts have seen fit to order a remand for further
   factfinding in cases in which the Board failed to apply the
   presumption of future persecution, see Osorio, 99 F.3d at
   932-33; Singh, 94 F.3d at 1361, that course is not necessary
   in this case.  In Osorio and Singh, the Board had erroneously
   concluded that the applicants had not suffered past
   persecution.  See Osorio, 99 F.3d at 931-33; Singh, 94 F.3d
   at 1360-61.  In Singh, the Board failed to reach the issue of
   whether the INS had rebutted the presumption because it had
   incorrectly found that the applicant had not suffered past
   persecution; the remand allowed the Board to consider this
   issue for the first time.  See 94 F.3d at 1360-61.  In
   Osorio, a remand was necessary both to address what the court
   viewed as an insufficiently reasoned credibility
   determination against the applicant and to reconsider the
   issue of the presumption if it found the applicant credible.  
   See 99 F.3d at 932-33.
       In Fergiste's case, by contrast, the Board did find past
   persecution, but erroneously regarded itself as bound to
   reject his application for asylum on the basis of changed
   country conditions.  If the Board had instead applied the
   regulation, the regulation would have required the Board to
   grant Fergiste's application for withholding of deportation
   and to find him eligible for asylum because the INS had
   failed to present individualized evidence rebutting the
   presumption.  This court would have affirmed such a decision,
   for which there was "substantial evidence."  A remand at this
   stage would permit the INS to argue its case against Fergiste
   a second time only because the Board failed to comply with
   its own regulations.  Such an opportunity would allow the
   agency to benefit from its own error at the expense of
   Fergiste, and we do not feel that the government is entitled
   to a second bite of the apple in the circumstances of this
   case.
       In light of the foregoing discussion, we reverse the Board's
   denial of asylum and withholding of deportation.  Because
   asylum is granted at the Attorney General's discretion, we
 remand that portion of the case for such a determination.   
    
    
    
    
    
    
    
    
    
    
    
    
    
    
    
    
    
    
                       - dissent follows -

   SELYA, Circuit Judge  (concurring in part and dissenting in
 part).  I concur wholeheartedly in the majority's conclusion
   that the Board member who authored the pivotal opinion
 committed a legal error that undermines the Board's decision.  
 If the majority opinion stopped there   vacating the Board's
 decision and remanding for a further hearing   I would be
 content.  But the majority presses on, deciding for itself
 that Fergiste has a well-founded fear of future persecution
 should he return to his homeland.  That determination is both
 fact-sensitive and time-sensitive, and, in my view, ought to
  be made by the Board on a full record, not gleaned by an
 appellate court from bits and pieces of an administrative
 record that has produced an inharmonious cacophony of rulings
 by three members of the BIA.  The case law, while less than
 crystalline, supports this position.  See, e.g., Osorio v.
   INS, 99 F.3d 928, 932-33 (9th Cir. 1996) (holding that
 "[f]ailure to recognize the existence of a presumption in
 [petitioner's] favor   much less to rebut that presumption in
 an individualized manner   constitutes an abuse of discretion
 requiring remand") (emphasis supplied); Singh v. INS, 94 F.3d
 1353, 1361 (9th Cir. 1996) (holding that "because the BIA
   never applied the regulatory presumptions, we think it
 appropriate to remand"); Tarvand v. INS, 937 F.2d 973, 977
 (4th Cir. 1991) ("When an alien's request for asylum has been
  erroneously evaluated by application of the [wrong legal
            standard], remand is appropriate.").
     To be sure, in some cases the record may be so pellucid that
 remand would be an empty exercise.  But, I see no indication
 that this is such a case.  Though the petitioner probably
 could not put forth any additional proof, I have every reason
 to believe that, in this very fluid situation, the INS might
 well bring forward material evidence to rebut the presumption
  that operates in Fergiste's favor.  In my judgment, this
 uncertainty necessitates a more open-ended remand than the
               majority is willing to grant.
     The majority notes that a more open-ended remand would give
   the INS an opportunity to muster evidence to rebut the
 presumption in favor of the petitioner.  Fair enough   but it
 will also serve to document the true state of affairs.  In
  the last analysis, the fact that the parties will have a
  second bite of the apple is a byproduct of virtually all
 remand orders that entail further factfinding, and thus, not
 entitled to much weight.  If the BIA believes the record is
 adequate to permit a principled decision, that is their call
                    to make - not ours.
     Because the court takes too much upon itself, and leaves too
 little to the Board, I respectfully dissent from so much of
 the opinion as forecloses the INS from attempting to show
 that Fergiste has no legally sufficient basis for a well-
 founded fear of future persecution should he be returned to
                           Haiti.
                                
                                

</body>

</html>